**Arthur E. WILSON, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE,**
**Appellee.**

**No. 6822.**

Supreme Court of Alaska.

Sept. 9, 1983.

James T. Brennan and John S. Hedland, Hedland, Fleischer & Friedman, Anchorage, for appellant.

Margaret J. Rawitz, Asst. Mun. Atty., and Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee.

Jonathan B. Rubini, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for amicus curiae state of Alaska.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and HANSON, Judge.[*]

## OPINION

COMPTON, Justice.

The primary issue in this appeal is whether AS 09.65.070(d)(1)[1], which confers immunity to municipalities for liability arising from safety inspections of private property,

---

[*] Hanson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. AS 09.65.070(d)(1) provides:

No action for damages may be brought against a municipality or any of its agents, officers or employees if the claim

(1) is based on a failure of the municipality, or its agents, officers, or employees, when the municipality is neither owner nor lessee of the property involved,

(A) to inspect property for a violation of any statute, regulation or ordinance, or a hazard to health or safety;

(B) to discover a violation of any statute, regulation, or ordinance, or a hazard to health or safety if an inspection of property is made; or

(C) to abate a violation of any statute, regulation or ordinance, or a hazard to health or safety discovered on property inspected . . . .

violates the equal protection clause of the Alaska Constitution. The statute is also challenged under two other constitutional provisions, article I, section 15, and article II, section 21. We hold that AS 09.65.-070(d)(1) is constitutional under all three provisions, and affirm the superior court's judgment.

In January of 1981, appellant Arthur E. Wilson was injured when he touched temporary electrical wiring while working at a construction site in Anchorage. Wilson sued appellee Municipality of Anchorage ("Anchorage"), alleging that Anchorage inspected the electrical installation but negligently failed to detect any defects.[2] Anchorage moved for judgment on the pleadings, asserting immunity from liability under AS 09.65.070(d)(1). The superior court granted Anchorage's motion and entered a final judgment against Wilson.

Prior to 1977, a municipality did not enjoy any immunity from tort liability.[3] In *State v. Jennings,* 555 P.2d 248, 251 (Alaska 1976), we held that municipalities are not immune from liability for negligence in the course of performing safety inspections. In the companion case of *Adams v. State,* 555 P.2d 235, 241 (Alaska 1976), we refused to recognize governmental immunity in the absence of legislative action: "[S]overeign immunity … is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine." In 1977, the legislature amended AS 09.65.070 to preclude municipal liability in actions based on the inspection of private property for violations of statutes, regulations and ordinances, or for hazards to health or safety. Ch. 37, § 3, SLA 1977.[4]

Wilson challenges the validity of AS 09.65.070(d)(1) under three provisions of the Alaska Constitution. First, he contends that the statute violates article I, section 15, which provides in relevant part that "no law making any irrevocable grant of special privileges or immunities shall be passed." This contention is meritless. Article I, section 15, does not bar the legislature from granting to municipalities all rights and immunities that are not also held by private entities; otherwise, municipalities would lose their power to govern. Therefore, AS 09.65.070(d)(1) does not violate article I, section 15.

Second, Wilson asserts that AS 09.65.070(d)(1) conflicts with article II, section 21, which provides: "The legislature shall establish procedures for suits against the State." He contends that the framers of the constitution intended that section 21 empower the legislature only to establish the *means* for asserting claims against the state, not to bar such claims entirely. We need not reach the issue of whether the legislature lacks the power to bar claims against the *state* under section 21 because AS 09.65.070(d)(1) only bars certain claims against *municipalities.* Section 21 expressly refers only to "suits against the State," it does not address "suits against municipalities." If the framers had meant to include municipalities, they could have referred, for example, to "suits against governmental entities." As we stated in *State v. Debenham Electric Supply Co.,* 612 P.2d 1001, 1002 (Alaska 1980), "Unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are

**2.** The Municipality of Anchorage has adopted building codes and established a building inspection program in Title 23 of the Anchorage Municipal Code. Pursuant to AMC 23.30.015 *et seq.,* electrical installations may not be made without a permit from the municipality.

Wilson also sued Redi-Electric, Inc., who installed the electrical wiring. The action against Redi-Electric has been stayed pending resolution of this appeal.

**3.** *See City of Fairbanks v. Schaible,* 375 P.2d 201, 208 (Alaska 1962); AS 09.65.070 (amended by ch. 37, §§ 1–3, SLA 1977).

**4.** AS 09.65.070 was also amended to confer immunity for firefighting functions, ch. 215, § 1, SLA 1975, ch. 37, § 2, SLA 1977, for discretionary functions, ch. 37, § 3, SLA 1977, for licensing functions, ch. 37, § 3, SLA 1977, for gratuitous extension of municipal services on an extraterritorial basis, ch. 37, § 3, SLA 1977, and for "the exercise or performance of a duty or function upon the request of, or by the terms of an agreement or contract with, the state to meet emergency public safety requirements," ch. 37, § 3, SLA 1977.

to be construed in accordance with their common usage." *See also* AS 01.10.040; 2A C. Sands, Sutherland Statutory Construction § 46.01, at 48–49 (4th ed. 1973). In the absence of any indication that section 21 applies to municipalities, we decline to expand the express application of this provision. Therefore, AS 09.65.070(d)(1) does not violate article II, section 21.

Last, Wilson contends that AS 09.65.070(d)(1) infringes upon his right to equal protection under article I, section 1, because it in effect creates impermissible classifications between tortfeasors and also between persons injured by tortfeasors. If an individual sustains an injury as a result of a municipality's negligence in performing a safety inspection, he or she cannot maintain an action against the municipality. If, on the other hand, the individual is injured as a result of a negligent *state* or *private* safety inspection, he or she can maintain an action against the state or private inspector. Thus, the statute divides tortfeasors into two classifications: state and private tortfeasors, who are liable for negligent safety inspections, and municipal tortfeasors, who are not liable for identical conduct. The statute also has the effect of dividing injured persons into two classes: persons injured as a result of state or private safety inspections, who can recover for the tortfeasor's negligence, and persons injured as a result of municipal safety inspections, who cannot recover for similar negligence.

■ In order for a classification to be valid under Alaska's equal protection test, it must be reasonable, not arbitrary, and must bear a fair and substantial relation to a legitimate governmental objective. Depending on the importance of the individual's interest involved, a greater or lesser burden will be placed on the state to show this fair and substantial relationship. *State v. Ostrosky,* 667 P.2d 1184, 1193 (Alaska 1983). To determine the proper level of scrutiny, therefore, the nature of the individual's interest must first be examined.

■ The interest in suing a particular party, in this case a governmental entity, is not fundamental. *See, e.g., Sambs v. City of Brookfield,* 97 Wis.2d 356, 293 N.W.2d 504, 511, *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980) (federal rational basis test applies to statute limiting recovery against municipality). On the other hand, the interest in redressing wrongs through the judicial process is significant. AS 09.65.070(d)(1), however, does not completely bar access to the courts. Whenever harm is caused by a municipality's failure to inspect, discover or abate a health or safety violation, it is also caused by the private party who violated the health or safety regulation. Therefore, although AS 09.65.070(d)(1) prevents recovery from the municipality, it does not prevent the injured person from seeking recovery from the principal tortfeasor. It may often be easier to recover from the municipality than from the concurrent tortfeasor; however, the interest in recovering from a "deep pocket" is only economic. Economic interests have traditionally been afforded minimal protection under equal protection analyses. *See, e.g., New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 516–17 (1976); *State v. Ostrosky,* 667 P.2d at 1193–1194. We thus conclude that Wilson's interest is of limited constitutional importance; accordingly, although the relationship between the classification and the legitimate governmental objective must be fair and substantial, a less than perfect fit between the means and ends will be tolerated.

Anchorage identifies several objectives served by the municipal immunity statute, which fall into two general categories: (1) alleviation of the administrative and financial burdens of liability; and (2) encouragement of safety inspection at the local level.

■ The first objective proferred by Anchorage is the need for municipalities to conserve their financial resources and to conduct safety inspections "without hindrance or intimidation caused by burdensome litigation." The validity of this objective is acknowledged in a dissenting opinion in *Adams:*

To assure total compliance [with fire, health and safety laws] would require an enormous expenditure of time and money by the government. . . .

To impose liability upon governmental entities for failure to adequately enforce fire and safety codes may discourage some of them, particularly the smaller communities in Alaska, from adopting such codes at all, as the financial commitment necessary to assure complete enforcement—and the ability to respond in damages—could well be crippling in its effects.

555 P.2d at 248 (Connor, J., dissenting). Granting immunity for municipal safety inspections will save the municipality time and money; therefore, there is a fair and substantial relationship between AS 09.65.-070(d)(1) and this purpose. Wilson asserts that the statute is underinclusive because this objective would also justify granting immunity for state safety inspections and for the many public functions that may expose municipalities and the state to liability. Although this is true, it cannot be disputed that the state, with its greater resources, organizational structure and personnel system, can assume greater risks and administrative burdens than can local government. The legislature could logically have assumed that only local governments, with their limited resource base, need the protection afforded by immunity for safety inspections. We do believe, however, that the need to conserve resources does not by itself provide justification for upholding a discriminatory classification. *Cf. Plyer v. Doe,* 457 U.S. 202, 227, 102 S.Ct. 2382, 2400, 72 L.Ed.2d 786, 806 (1982) ("preservation of resources" justification insufficient under federal intermediate scrutiny test).

The other objective identified for granting immunity is to encourage the municipalities to undertake safety inspections. Anchorage contends that AS 09.65.070(d)(1) furthers this objective because, at the time the statute was enacted, there were indications that some municipalities might cease safety inspection programs. Whether they would have or not is arguable; however, logical assumptions need not be verified by statistical evidence, *Vance v. Bradley,* 440 U.S. 93, 110–11, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171, 184–85 (1979), and the state need not wait until safety inspection programs actually cease before remedying a perceived problem.

Wilson contends that these two objectives can be accomplished by less restrictive alternatives. For example, the state could make safety inspections mandatory for municipalities and subsidize the cost of insurance or impose a dollar limitation on liability. The availability of less restrictive alternatives, however, does not automatically invalidate a statute when fundamental rights are not involved. In view of the limited constitutional importance of Wilson's interest, i.e., recovering from Anchorage in addition to the party who installed the electrical wiring, we decline to interfere with the legislature's decision not to implement these alternative solutions.

The judgment of the superior court dismissing Wilson's suit against Anchorage is AFFIRMED.