James D. ERICKSEN, Plaintiff and Appellee,

v.

SALT LAKE CITY CORPORATION and Salt Lake Airport Authority, Defendants and Appellants.

SALT LAKE CITY CORPORATION, Third–Party Plaintiff,

v.

PROJECTS UNLIMITED, INC., a Utah corporation, Third–Party Defendant.

No. 910210.

Supreme Court of Utah.

Aug. 31, 1993.

Mitchell R. Jensen, Ned P. Siegfried, John Farrell Fay, J. Craig Swapp, Salt Lake City, for plaintiff and appellee.

Roger H. Bullock, Salt Lake City, for defendants and appellants.

Bruce T. Jones, Charles P. Sampson, Paul M. Simmons, Salt Lake City, for third-party defendant.

HOWE, Associate Chief Justice:

Defendants Salt Lake City Corporation and Salt Lake Airport Authority ("the City") appeal from a judgment for $94,892 entered on a jury verdict awarding plaintiff James D. Ericksen damages for personal injuries he sustained in an accident while working on City property. Ericksen cross-appeals, contending that the trial court erred in determining the amount of damages to which he was entitled.

Ericksen was employed by Projects Unlimited, Inc., a general contractor that had been engaged by the City to construct a maintenance facility building at Salt Lake City International Airport. Fourteen large garage-type overhead doors were located on opposite sides of the building. Fourteen

electric control buttons were mounted on the walls. Each button opened and closed the door on its left. On the day of the accident, March 5, 1987, Millard Rice, a construction inspector employed by the City, was inspecting the rubber seal along the bottom edge of one of the doors. To facilitate the inspection, he endeavored to raise the door slightly. However, he inadvertently pushed the wrong button and raised a different door. At that instant, Ericksen was working on a ladder that rested against this door. The opening of the door dislodged the ladder, and Ericksen fell to the cement floor below, injuring his lower back. He received workers' compensation benefits from Projects Unlimited.

Ericksen then brought this negligence action against the City. The City moved for summary judgment, contending that it was immune from liability under Utah Code Ann. § 63–30–10(1)(d) (1989) (now § 63–30–10(4) (Supp.1993)), which immunizes governmental entities from suit when the injury

> arises out of a failure to make an inspection or by reason of making an inadequate or negligent inspection of any property.

The motion was denied. The City then joined Projects Unlimited as a third-party defendant, contending that the terms of the construction contract required Projects to indemnify the City against any liability to Ericksen. The City and Projects Unlimited filed cross-motions for summary judgment on the indemnity issue, and the trial court granted the motion of Projects Unlimited.

A trial on Ericksen's complaint against the City followed. Although Projects Unlimited had been dismissed from the suit, it was named on the verdict form, and the jury apportioned negligence of 10 percent to Ericksen, 50 percent to the City, and 40 percent to Projects Unlimited. The jury found Ericksen's damages to be $186,200. The trial court entered judgment on the verdict against the City and in favor of Ericksen for 50 percent of that amount together with interest on his special damages and costs of court, making a total of $94,892. Pursuant to Utah Code Ann. § 35–1–62 (1988), Ericksen was obligated to reimburse his employer, Projects Unlimited, for the workers' compensation benefits he had received.

## GOVERNMENTAL IMMUNITY

■ The City contends that the trial court erred in denying its first motion for summary judgment because Ericksen's injury arose out of immune conduct, i.e., the City's inspection of property. § 63–30–10(1)(d). The City points out that Rice's negligent conduct occurred at the very core of the inspection process in that (1) he was attempting to raise a door to make a more thorough inspection, and (2) it was not an incidental act which happened to occur during the course of the inspection, unrelated to the inspection itself.

We acknowledge the force of the City's argument; however, we believe it reads too much into the grant of immunity. Section 63–30–10 generally waives immunity for the negligent conduct of governmental employees, subject to exceptions where immunity is retained. One of those exceptions, contained in subparagraph (1)(d), is when the injury arises out of a failure to make an inspection or by reason of making an inadequate or a negligent inspection of any property. The question of whether a governmental entity is liable for the negligent inspection of property most frequently arises when the entity undertakes inspections to assure compliance with building, fire, electric and other safety codes. 57A Am.Jur.2d *Negligence* § 376 (1989). Here, it appears that the inspection may have been broader in scope than that. Rice was not an inspector in the City's inspection department. He had an office at the airport, and his job was to assure that construction carried on at the airport was done in accordance with the plans and specifications to which the City and the contractor had agreed. Rice would call to the attention of the general contractor's superintendent any deviation which he discovered. In this role, he served as an inspector for the City as the owner of the property and as a party to the construction contract. He functioned differently from a city inspector who inspects construction on private prop-

erty for compliance with building, fire, electric, and other safety codes.

Disregarding that difference for the purposes of this case, however, we believe that the legislature intended to preserve a narrow immunity for inspections to allow inspectors to perform their work without fear that an oversight which later causes injury would give rise to liability on the part of a governmental entity. The conclusions and results of the inspection are not to be second-guessed by courts and juries. One court has "recognized that regulatory activities which are engaged in for the benefit of the public generally would be discouraged by the imposition of civil tort liability, and that this is not in the public interests." *Garry v. Payne*, 224 N.J.Super. 729, 735–36, 541 A.2d 293, 297 (1988). See also *Wilson v. Municipality of Anchorage*, 669 P.2d 569 (Alaska 1983), where the court upheld the constitutionality of immunity for inspections (1) because of the need of municipalities to conserve their financial resources and to conduct safety inspections without hindrance or intimidation caused by burdensome litigation, and (2) to encourage municipalities to undertake safety inspections. We expressed similar sentiments with respect to the immunity granted in connection with the issuance, denial, suspension, or revocation of licenses in *Gillman v. Department of Financial Institutions*, 782 P.2d 506, 513 (Utah 1989). We there quoted with approval the following from 4 California Law Revision Commission, *Reports, Recommendations and Studies* 817–18 (1963):

Far more persons would suffer if government did not perform these functions than would be benefitted by permitting recovery in cases where the government is shown to have performed inadequately.

We thus conclude that the immunity granted in section 63–30–10(1)(d) was intended to immunize only the conclusions and results of an inspection where the inspector may have overlooked something or made a faulty judgment in deciding whether to approve or reject the subject of the inspection. It was not intended to broadly shield the inspector from his negligent acts as he went about making the inspection.

In the latter situation, there is no policy reason to immunize the governmental entity any more than when any other governmental employee acts negligently in the course of his employment.

Because Ericksen's injury did not arise from the conclusions or results of the inspection made by Rice, the trial court did not err in denying the City's motion for summary judgment on the issue of immunity.

### INDEMNITY

The written contract between the City and Projects Unlimited provides in article 15:

The Contractor agrees to at all times protect, indemnify, save harmless and defend the City, its agents and employees from any and all claims, demands, judgments, expenses, including reasonable attorney's fees, and all other damages of every kind and nature made, rendered or incurred by or in behalf of any person or persons whomsoever, including the parties hereto and their employees, which may arise out of any act or failure to act, work or other activity related in any way to the project, by the said Contractor, its agents, subcontractors, materialmen or employees in the performance and execution of this Agreement.

The City and Projects Unlimited filed cross-motions for summary judgment on the issue of whether Projects Unlimited was required to indemnify the City for Rice's negligence. The trial court granted Projects Unlimited's motion, ruling that Projects Unlimited had no such duty to indemnify. We find no error. The City's reliance on *Freund v. Utah Power & Light Co.*, 793 P.2d 362 (Utah 1990), is misplaced. There, the contract of indemnity was much broader in its sweep than what we find in the instant case. It is clear that article 15 entitles the City to indemnification only when the claim arises out of an act of the contractor or its agents, subcontractors, materialmen, or employees in the performance and execution of the agreement. Rice was employed by the City and was not an agent, subcontractor, materialman, or employee of Projects Unlimited. Judgment was properly entered against the City for

only 50 percent of the damages sustained by Ericksen as found by the jury. This 50 percent is attributable to Rice's negligence. The City is not liable for the other 50 percent of the damages, which are attributable to the negligence of Ericksen and Projects Unlimited. Therefore, no duty to indemnify arises.

## VERDICT FORM

■ Ericksen cross-appeals, contending that the trial court erred in placing Projects Unlimited's name on the verdict form and allowing the jury to determine its percentage of negligence in causing the accident. Ericksen relies on the Utah Liability Reform Act, Utah Code Ann. § 78–27–37 to –43 (1992). He argues that because Projects Unlimited was his employer and paid him workers' compensation, Projects Unlimited was immune from all tort liability and should not have been involved in this negligence action.

We again find no error. In the recent case of *Sullivan v. Scoular Grain Co.*, 853 P.2d 877, 878 (Utah 1993), we stated that the intent of the Liability Reform Act was to require that a jury account for the relative proportion of fault of a plaintiff's employer in causing the accident. Apportionment of an employer's fault does not subject the employer to civil liability, but ensures that no defendant is held liable to any claimant for an amount of damages in excess of the percentage of fault attributable to that defendant.

## REIMBURSEMENT

■ Additionally, Ericksen assails the provision of section 35–1–62 that requires him, out of the judgment he obtained against the City, to reimburse his employer for workers' compensation benefits he has received. We acknowledged this inequity in *Sullivan*, 853 P.2d at 882–83, and found that the intent of section 35–1–62 in this regard was unmistakable. As we did in that case, we commend to the legislature this inequity for its appropriate remedial action.

Judgment affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Justice, dissenting:

The holding of this case is premised on this Court's decision in *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (Utah 1993). The result of the holding is that plaintiff's recovery has been reduced twice: first by reducing plaintiff's judgment in his tort action by the percentage of his employer's fault, and second by requiring plaintiff to reimburse his employer for the workers' compensation benefits the employer paid him out of the judgment he obtained in the tort action. It was precisely this injustice that the Legislature sought to avoid when it carefully drafted the Utah Liability Reform Act of 1986, which the majority erroneously interpreted in *Sullivan*.