2000 Utah Ct. App. 286

**Linda ILOTT, Plaintiff and Appellant,**

v.

**UNIVERSITY OF UTAH, Defendant and Appellee.**

**No. 990788–CA.**

Court of Appeals of Utah.

Oct. 19, 2000.

Peter C. Collins, Tara L. Isaacson, Bugden, Collins & Morton, Salt Lake City, for Appellant.

Jan Graham, Attorney General, and Brent A. Burnett, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., JACKSON, Associate Presiding Judge, and ORME, Judge.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Linda Ilott challenges the trial court's ruling granting summary judgment for the University of Utah (University). We reverse.

## BACKGROUND

■ ¶ 2 As a business invitee,[1] Ilott attended a game at the University's football stadium. While there, she walked up some wooden bleachers to meet with family. As she walked back down the bleachers, she fell when a plank broke beneath her foot. Ilott then brought a negligence suit against the University for injuries she allegedly sustained in the fall.

¶ 3 The University moved for summary judgment, raising the Utah Governmental Immunity Act (the Act) as a defense. *See* Utah Code Ann. §§ 63–30–1 to –38 (1997 & Supp.1999). Specifically, the University argued it was immune from suit because Ilott's negligence claim arose from either an "inadequate" inspection of the bleachers by the University or the "latent defective condition" of the bleachers. *See id.* § 63–30–10(4), (17) (1997) ("Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of, in connection with, or results from: . . . (4) a failure to make an inspection or by making an inadequate or negligent inspection; . . . (17) a latent dangerous or latent defective condition of any public building, structure, . . . or other public improvement. . . ."). The trial court ruled for the University on the inadequate inspection ground. Ilott appeals.

## ANALYSIS

■ ¶ 4 Summary judgment is proper only "when the pleadings, depositions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Baczuk v.*

*Salt Lake Reg'l Med. Ctr.*, 2000 UT App 225, ¶ 5, 400 Utah Adv. Rep. 5, 8 P.3d 1037 (citing Utah R.Civ.P. 56(c)). We review for correctness the trial court's grant of summary judgment for the University. *See id.*

¶ 5 Ilott argues the trial court incorrectly determined that the University is immune based on inadequate inspection. The University rejoins that the duty it owed Ilott as its business invitee was to reasonably inspect its property for unsafe conditions. *See Rogalski v. Phillips Petroleum Co.*, 3 Utah 2d 203, 208, 282 P.2d 304, 307 (1955) ("The duty owed by an owner of land to a business visitor is to inspect and maintain his premises in a reasonably safe condition or to warn the visitor of any dangerous conditions existing thereon."). The University presented to the trial court affidavit and deposition evidence showing that it had inspected the bleachers and the unsafe condition of the plank at issue had not been found. The University thus urges that, if a reasonable inspection should have found the defect, the University did unreasonable, inadequate inspections and is immune. *See* Utah Code Ann. § 63–30–10(4) (1997). Alternatively, the University continues, if the inspections it did *were* reasonable, then because the defect was not found, the University is immune because the defect was latent. *See id.* § 63–30–10(17).

### I. Inadequate Inspection

¶ 6 The supreme court discussed the application of Utah Code Ann. § 63–30–10(4) (1997) in two cases: *Ericksen v. Salt Lake City Corp.*, 858 P.2d 995 (Utah 1993), and *Nixon v. Salt Lake City Corp.*, 898 P.2d 265 (Utah 1995).

¶ 7 In *Ericksen*, a construction inspector working for Salt Lake City was inspecting the work of contractors on city property when he pushed a wrong button, which raised a door. *See Ericksen*, 858 P.2d at 997. The plaintiff, a contractor, was on a ladder propped against that door. *See id.* When the door rose, the plaintiff fell and was in-

---

1. A "business invitee" is "one who goes upon the premises of another . . . at the invitation of the owner. This may be expressed, or it may be implied because it is done in connection with the owner's business, or some mutual business of advantage to the owner." *Stevens ex rel. Stevens v. Salt Lake County*, 25 Utah 2d 168, 171, 478 P.2d 496, 498 (1970).

jured. *See id.* The city asserted it was immune from suit because the incident involved a negligent inspection. *See id.*

¶ 8 The supreme court rejected the city's defense. *See id.* First, it noted that "[t]he question of whether a governmental entity is liable for the negligent inspection of property most frequently arises when the entity undertakes inspections to assure compliance with building, fire, electric and other safety codes." *Id.* The court distinguished that kind of inspection from the one occurring under *Ericksen's* facts. In code-compliance inspections, a government employee inspects the property of a third party, while in the inspection in *Ericksen,* the government employee was inspecting his own employer's property, not for code-compliance, but for compliance with contractual specifications. *See id.* at 997–98. The court then "[d]isregard[ed] that difference for the purposes of this case," making the above distinction sound like dicta. *Id.* at 998.

¶ 9 In the possibly more precedential part of the opinion, the court went on to state "that the legislature intended to preserve a *narrow immunity* for inspections" in the Act. *Id.* (emphasis added). The court ultimately denied the city immunity, holding that the Act "intended to immunize only the conclusions and results of an inspection where the inspector may have overlooked something or made a faulty judgment," but not "to broadly shield the inspector from his negligent acts as he went about making the inspection." *Id.*

¶ 10 In that part of the opinion though, the court also reiterated the concept that immune inspections are those in which the government inspects a third party's property for code compliance. The court observed that "[o]ne court has 'recognized that *regulatory activities* which are engaged in for the benefit of the public generally would be discouraged by the imposition of civil tort liability, and that this is not in the public interests.'" *Id.* (emphasis added) (quoting *Garry v. Payne,* 224 N.J.Super. 729, 541 A.2d 293, 297 (1988) (involving inadequate government inspections of private property for compliance with regulations)). The court also cited with approval *Wilson v. Municipality of Anchor-*

*age,* 669 P.2d 569, 570–73 (Alaska 1983) (involving city inspection of private property for compliance with building codes), which "upheld the constitutionality of immunity for [safety] inspections." *Ericksen,* 858 P.2d at 998.

¶ 11 Meanwhile, in *Nixon,* Salt Lake City contracted with a custodial service to clean city property. *See Nixon,* 898 P.2d at 267. The plaintiff, who worked for the service, hurt himself on city property while using defective city machinery. *See id.* After he sued the city for his injury, the city asserted immunity under the Act, arguing its inspection of its own equipment was negligent. *See id.* at 270. The supreme court concluded "as a matter of law [that] the acts complained of are acts of maintenance rather than acts of inspection." *Id.* The court quoted the language from the part of *Ericksen* that had seemed like dicta: "'[T]he question of whether a governmental entity is liable for the negligent inspection of property most frequently arises when the entity undertakes inspections to assure compliance with building, fire, electric and other safety codes.'" *Id.* (quoting *Ericksen,* 858 P.2d at 997). If that statement had been dicta in *Ericksen,* it now seems to have been elevated to precedential quality by *Nixon.*

¶ 12 The court re-emphasized the "'narrow immunity for inspections' set out in section 63–30–10(4)." *Id.* at 271 (quoting *Ericksen,* 858 P.2d at 998). It stated that "[t]his is not a case where an inspector failed to determine that a particular building or piece of equipment was unsafe for the public as a whole. Instead, [city] employees failed to perform routine maintenance on a floor scrubber and thereby injured a custodian." *Id.* The court explained how public policy supports its conclusion:

[I]mmunity for negligent inspection developed from "public duty doctrine" and that public duty doctrine "operates to disallow recovery by individuals for such inspections on the ground that the [inspection] was intended to protect the *general public, and to provide a means of enforcing a third party's duty to repair defects, rather than to protect a particular individual or class of individuals."

*Id.* (alteration in original; emphasis added) (quoting 57A Am.Jur.2d *Negligence* § 376 (1989) [2]). The court concluded that "the actions at issue here were not an inspection" under the Act. *Id.*

¶ 13 From *Ericksen* and *Nixon,* the trial court in this case developed a two-pronged analysis by which it concluded the University is immune from Ilott's suit under subsection four. The trial court focused on the factual situation in *Ericksen* and the "general public" language of *Nixon* in determining that this inspection fell within subsection four's parameters, reasoning that (1) this case does not involve a tangential negligent act during an inspection (*Ericksen* ), but the potential negligence of the result of an inspection, and (2) the University's inspection was done for the benefit of the general public (*Nixon* ).

¶ 14 The trial court's focus was incorrect. Both cases stressed immunity for—and cited to legal authority about—governmental inspections of property owned by third parties to determine whether the property complied with safety codes. *Ericksen's* analysis was supported by citing to cases involving those kinds of situations and implied that those inspections that are immune are " 'regulatory activities.' " [3] *Ericksen,* 858 P.2d at 998 (citing *Garry,* 541 A.2d at 297; *Wilson,* 669 P.2d at 569). Obviously, this case is different: The University crew here was employed by the University to maintain University property. The University has not mentioned the need to inspect for compliance with safety codes and was not engaging in a "regulatory activity" when its crew inspected the bleachers for defects.

¶ 15 *Nixon* explained the "public duty" policy underpinning of governmental inspection immunity. Such immunity attaches be-cause the inspections are meant " 'to protect the general public, and to provide a means of enforcing a third party's duty to repair defects, rather than to protect a particular individual.' " *Nixon,* 898 P.2d at 271 (quoting 57A Am.Jur.2d *Negligence* § 376 (1989)). The trial court—in ruling the University was immune—incorrectly concentrated on the protection of the general public and concluded that the inspection here was for that purpose. However, both parties have referred to Ilott as a business invitee—not a member of the general public—in determining what the University's duty to her was in this case. Ilott was a member of a specific group (business invitees paying to attend a football game) whom the inspection was meant to protect.

¶ 16 The trial court also failed to reconcile with its analysis the other language stating that immune inspections are meant " 'to provide a means of enforcing a *third party's* duty to repair defects.' " *Id.* (emphasis added) (quoting 57A Am.Jur .2d *Negligence* § 376 (1989)). The University's bleacher inspection was definitely not for that purpose, but was to enforce its own duty to its own business invitees to repair any defects. This case, like *Nixon,* involves "as a matter of law ... acts of maintenance rather than acts of inspection." *Id.* at 270. Accordingly, we conclude the trial court incorrectly granted summary judgment for the University on the basis of immunity for an inadequate inspection.

## II. Latent Defective Condition

¶ 17 Alternatively, the University asserts immunity because it contends Ilott's claim involves "a latent dangerous or latent defective condition of any public building,

---

**2.** Following this quoted statement, *American Jurisprudence* cites to five cases all dealing with governmental inspections of third party's property for code compliance. *See Duran v. City of Tucson,* 20 Ariz.App. 22, 509 P.2d 1059, 1060–64 (1973) (involving city fire department inspection of body shop for compliance with fire code); *Hage v. Stade,* 304 N.W.2d 283, 285 (Minn.1981) (involving state fire marshal's safety inspection of hotel; *Cracraft ex rel. Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 803–08 (Minn.1979) (involving city fire inspector's inspection of school); *Halvorson v. Dahl,* 89 Wash.2d 673, 574 P.2d 1190, 1191–93 (1978) (involving city inspections of hotel for compliance with building, housing, and safety codes); *Campbell v. City of Bellevue,* 85 Wash.2d 1, 530 P.2d 234, 235–41 (1975) (involving city electrical inspector's inspection of private residence).

**3.** Regulations are "rule[s] or order[s], having legal force, issued by an administrative agency or a local government." *Black's Law Dictionary* 1289 (7th ed.1999).

structure, ... or other public improvement" under Utah Code Ann. § 63–30–10(17) (1997).

¶ 18 "The term 'latent defect' is defined in *Black's Law Dictionary* (Rev. 4th ed.1968) as, 'A defect which reasonably careful inspection will not reveal.'" *Vincent v. Salt Lake County,* 583 P.2d 105, 107 (Utah 1978). And, "[o]rdinarily, ... questions of reasonableness necessarily pose questions of fact which should be reserved for jury resolution." *Darrington v.. Wade,* 812 P.2d 452, 459 (Utah Ct.App.1991). Only "in the clearest cases" should such questions be resolved in summary judgment situations. *Id.*

¶ 19 This is not one of those clear cases. Ilott raised at least two factual issues regarding the reasonableness of the University's maintenance inspections of the bleachers. First, the University asserted that in one of its maintenance inspections a University crew, with members varying in weight from about 120 to 300 pounds, walked and jumped on the bleachers to test their strength. Meanwhile, it was undisputed that Ilott weighed about 211 pounds at the time of the accident. That creates an issue of fact as to whether it was reasonable to inspect the bleachers using lighter crew members who might not discover planks prone to breakage like a heavier person might.

¶ 20 Second, Ilott presented evidence showing that one possible conclusion to be drawn from the University's maintenance inspections was that the bleachers as a whole were generally defective, which would render the defect in the plank at issue patent. She places at issue the reasonableness of the University's conclusion from its maintenance inspections that only individual, discrete planks were defective and, because the plank at issue was not discovered to be defective, the defect was latent.

¶ 21 Given these material issues of factual dispute, we decline the University's invitation to affirm the trial court's grant of summary judgment on the ground of immunity from a claim involving "a latent dangerous or latent defective condition of any public building, structure, ... or other public improvement" under Utah Code Ann. § 63–30–10(17) (1997).

CONCLUSION

¶ 22 We conclude the University's examination of its stadium bleachers for unsafe conditions was an act of maintenance, not inspection under Utah Code Ann. § 63–30–10(4) (1997). We further conclude that Ilott has raised a material issue of factual dispute regarding whether this case involves a latent defect under Utah Code Ann. § 63–30–10(17) (1997). Accordingly, we reverse the trial court's grant of summary judgment for the University and remand for trial court proceedings consistent with this opinion.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.