540 So.2d 178 (1989)
The CITY OF WINTER PARK, Florida, Appellant,
v.
SOUTHERN STATES UTILITIES, INC., et al., Appellees.
No. 88-242.
District Court of Appeal of Florida, Fifth District.
March 16, 1989.
*179 Frederic B. O'Neal of Winderweedle, Haines, Ward & Woodman, P.A., Orlando, for appellant.
Thomas A. Cloud, Philip H. Trees, Stephen A. Hilger, and Forrest S. Fields, Jr. of Gray, Harris & Robinson, P.A., Orlando, for appellee Southern States Utilities, Inc.
Terry C. Young and Matthew G. Brenner of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees Goldenrod Partners, Ltd., Mark E. Harris and James B. Taturn.
COWART, Judge.
Appellant, City of Winter Park, enacted, pursuant to section 180.02(3), Florida Statutes, an ordinance extending its corporate power over its municipal sewer service zone outside its corporate limits so as to require property owners outside the city but within such service zone to connect to the city's sewer system when it became available. Appellee Southern States Utility, Inc., a non-governmental utility company (public service corporation) with a certificate issued by the Florida Public Service Commission (PSC) pursuant to section 367.031, Florida Statutes, authorizing it to provide sewer service, entered into a contract with appellee landowners to supply sewer service to a tract of land lying within a portion of the area embraced within the city's ordinance where the city does not presently have sewer service capability.
The city filed this action against the utility company and the landowners alleging that the utility company was providing sewer service to the landowners within the city's exclusive sewer service zone and that the city would have capacity to serve the land owners' property by a date about 17 months in the future from the date the action was originally filed. The complaint prayed for a declaratory judgment to the effect that the landowners would be required to disconnect from the utility company's sewer system and connect with the city's sewer system when the city could provide sewer service.
The trial court held that the city under its ordinance could compel the landowners to connect with its sewer system only if the city sewer treatment capacity was available at the time it was needed by the landowners and found that there was no material issue as to the fact that the city did not have the present ability to provide sewer service to the landowners' property and that, accordingly, the utility company was free to contract to provide sewer service to the landowners' property without intervention [interference] from the city. Although not affirmatively expressed, the effect of the trial court's denial of the city's prayer for a declaratory judgment that the landowners would be required to disconnect from the utility company's sewer system and connect with the city's sewer system when it became available and entry of summary judgment against the city was that the landowners would not be required to terminate their sewer service contract with the utility company and connect to the city's sewer system if and when it became available to the landowners' property. The city appeals.
Interestingly, this litigation is somewhat of a shadow of a prior litigation as to the same issue between the same parties that came about as follows: earlier, the utility company applied to the Public Service Commission to amend its certificate of public necessity to provide sewer service to the property now in question and other property. The city objected. The PSC, by order numbered 18525, and dated December 9, 1987 (87 FPSC 12:125), found that the city had more demand for sewer service than it had capacity and that while the city expected to be able to provide sewer service at some time in the future, the city would not execute a commitment to provide sewer service and desired to place those needing service on a list to wait until the city could provide service while the utility company had existing unused sewer treatment capacity and was willing and able to serve the public. As to the city's claim to the exclusive right to serve the property in question under its municipal service zone, the commission noted that it is not bound by the city's ordinance extending its corporate power beyond its city limits, nor by a local comprehensive plan enacted under *180 section 163.3161, Florida Statutes, stating that the test was who was in the best position to provide the needed sewer service which the commission found to be the utility company rather than the city. The commission expressly declined the city's request that the utility company's certificate for authority to serve this area be issued subject to the condition requiring disconnection when the city became able to supply sewer service, noting that the commission had no jurisdiction over the city sewer system.[1] The city appealed the Public Service Commission's order to the First District Court of Appeal which affirmed. See City of Winter Park v. Southern States Utilities, 530 So.2d 310 (Fla. 1st DCA 1988).
We agree with the Public Service Commission and the trial court. All corporations which voluntarily undertake to engage in performing a service of a public nature whether a governmental agency, such as a municipality, or a private corporation, assume an obligation implied by law to render, for reasonable compensation and without discrimination and to all of the public in the area sought to be served, a service reasonably adequate to meet the just requirements of those sought to be served.[2]
A city cannot undertake to extend its service franchise beyond an area it is able to serve and thereby prevent the public from being served by anyone else. The public is entitled to be served and served by the entity best able to serve it. In this case, the utility company is able to provide the public with the service that the city is unable to provide. The city has no legal right to prevent the utility company from serving the consuming public and no right to require the public to disconnect from the utility company that can now serve it and connect with the city's sewer system if and when the city gets around to meeting its duty to provide the service that it has undertaken to provide.
AFFIRMED.
DAUKSCH and DANIEL, JJ., concur.
NOTES
[1] Section 367.022(2), Florida Statutes, exempts utility systems owned, operated, managed or controlled by governmental agencies from the jurisdiction of the PSC. It is said that the legislature reasons that it is unnecessary for the PSC to exercise regulatory power over a municipal utility because the people own the utility and it functions for their benefit and they have elective control over the officials operating the utility. See generally 43 Fla.Jur.2d Public Service Commission § 37 [Jurisdiction] Over Municipalities and Cooperatives (1983). When a municipal utility operates beyond its corporate limits, the residents there being served do not own the utility and are not electors in that city. Query: Who regulates the municipal utility in the interest of those served outside the municipality?
[2] See Woodbury v. Tampa Waterworks Co., 57 Fla. 249, 49 So. 556 (1909); Hildreth v. Western Union Tel. Co., 56 Fla. 387, 47 So. 820 (1908); State ex rel. Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 So. 213 (1907); and In re Sanford and Winter Park Tel. Service, 26 Fla. Supp. 27 (1965).