PATTERSON, Judge.
The City of Clearwater (the City) appeals from a final judgment in favor of Allen’s Creek Properties, Inc. (Allen’s Creek), declaring that the City has an obligation to provide sanitary sewer services to the Allen’s Creek property, which is outside its municipal boundaries. We reverse.
Allen’s Creek is the owner of a tract of land comprised of approximately sixty acres located between U.S. Highway 19 and Tampa Bay, immediately east of the Belleair Road and U.S. Highway 19 intersection in Pinellas County. In September 1990, Allen’s Creek submitted a site plan for development of this tract to Pinellas County. Pinellas County officials directed Allen’s Creek to apply to the City for sewer services. In response to Allen’s Creek’s request for sewer service, the City advised that it required annexation as a condition to the providing of such services pursuant to City of Clearwater, Florida, Ordinance 68-97 (August 5, 1968)[1]. Allen’s Creek responded by initiating this action for declaratory and other relief. In determining that the City had assumed a legal duty to provide sewer services outside its municipal boundaries, the trial court relied on a document entitled the Central Pinellas County 201 Facilities Plan (the 201 Plan) and an interlocal agreement between the City and the City of Largo.

THE 201 PLAN

In 1972, the United States Congress enacted the Federal Water Pollution Control Act Amendments of 1972, Pub.L. No. 92-500, § 2, 86 Stat. 816. The goal of the act was to eliminate the discharge of pollutants into navigable waters by 1985. To that end, the act provided for federal funding to create plans for area waste treatment management. Section 201(g) of the act provided for grants for the construction of treatment works. Pursuant to the act, the City participated in the 201 Plan. The project was carried out under the auspices of the Florida Department of Environmental Protection and the United States Environmental Protection Agency (EPA). The study focused on the disposal of treated wastewater by “deep well injection” and provided for “service areas” to determine the scope of facilities which would be required. By City of Clearwater, Florida, Resolution 78-132 (December 7, 1978), the City approved the final 201 Plan which included an “exclusive service area” of the *541 City.[2] The Allen’s Creek tract of land is within Clearwater’s service area. The City submitted the 201 Plan, as adopted, to the EPA for approval. The EPA rejected the Plan because it did not favor the use of deep well injection. The City then discontinued its study of deep well injection and went forward to develop, with its own funds, an alternative method of wastewater treatment not recommended by the 201 Plan. No attempt was made to implement the 201 Plan itself.

THE INTERLOCAL AGREEMENT

On September 19, 1983, pursuant to section 163.01, Florida Statutes (1983), the City and the City of Largo entered into an inter-local agreement which defined their respective exclusive sanitary sewer service areas. The agreement stated that the cities would not compete to supply sewer services; each city would provide the other with wholesale sewer services for portions of each exclusive service area which fell within the municipal boundaries of the other. The geographical areas established by this agreement were virtually identical to the areas contemplated by the 201 Plan.

THE TRIAL COURT’S FINDINGS

In its judgment, the trial court made the following pertinent findings and conclusions:
The Court finds that by voluntarily adopting the 201 plan and entering into the 1983 inter-local agreement which gave the City the exclusive right to provide sanitary sewer service to the area of Plaintiff’s property, the City demonstrated its intent to provide sanitary sewer service within the area it had the exclusive right to serve....
The Court finds based upon the record in this case there is no rational basis to require annexation as a condition of service. The City has assumed an obligation, implied by law, to render to all of the public in its service area sanitary sewer service, City of Winter Park v. Southern States Utilities, Inc., 540 So.2d 178 (Fla. 5th DCA 1989).
The City argues, and Allen’s Creek does not dispute the general rule, that a municipality cannot be compelled to supply services to areas outside its municipal boundaries. See Allstate Ins. Co. v. City of Boca Raton, 387 So.2d 478 (Fla. 4th DCA 1980); C.C. Marvel, Annotation, Right to Compel Municipality to Extend its Water System, 48 A.L.R.2d 1222 (1956). We therefore examine the authorities Allen’s Creek cites to fit this case within an exception to that general rule.
The trial court, in its final judgment, relied on City of Winter Park v. Southern States Utilities, Inc., 540 So.2d 178 (Fla. 5th DCA 1989). In Winter Park, the City, pursuant to section 180.02(3), Florida Statutes, enacted an ordinance extending its sewer service beyond its corporate limits. It then sought to prohibit a nongovernmental utility company from providing sewer services within this extended service area. Winter Park provides no authority here since the City has not enacted such an ordinance and seeks to refuse, not require, the furnishing of services.
In addition, Allen’s Creek relies on Sebring Utilities Commission v. Home Savings Ass’n of Florida, 508 So.2d 26 (Fla. 2d DCA), review denied, 515 So.2d 230 (Fla.1987), which must be read together with Edris v. Sebring Utilities Commission, 237 So.2d 585 (Fla. 2d DCA), cert. denied, 240 So.2d 643 (Fla.1970). In Edris, this court held that the Sebring Utilities rule, which required water customers outside the municipal boundaries to also purchase electricity from the City, was discriminatory and invalid. In Home Savings, this court reached the opposite result when Sebring Utilities demonstrated an economic need for such an interlocked service requirement. While these cases shed some light on the City’s right to “interlock” the providing of sewer services with annexation, they do not provide an exception to the general rule stated above.
*542 Allen’s Creek also cites City of Clearwater v. Metco Development Corp., 519 So.2d 28 (Fla. 2d DCA 1987), review denied, 525 So.2d 876 (Fla.1988), for the proposition that the City’s annexation policy is invalid. In that ease, the court struck down the City’s requirement of annexation in return for water services in unincorporated areas. The decision, however, turns on the fact that the City and Pinellas County had entered into a contractual relationship whereby the City agreed to provide water services to certain unincorporated areas. This court affirmed the trial court’s holding that the City could not alter this contractual duty by adding a condition of annexation. Thus, it provides no authority for this case wherein the City has no corresponding contract in regard to sewer services.
Likewise, Williams v. City of Mount Dora, 452 So.2d 1143 (Fla. 5th DCA 1984), has no application here. The issue in Williams was whether the City as a public utility could require a new applicant for electric service, in an area outside its municipal boundaries which it chose to serve, to pay the delinquent bill of a prior occupant as a condition of receiving service.
The only case, cited by either party, that we find persuasive is Allstate Insurance Co. v. City of Boca Raton, 387 So.2d 478 (Fla. 4th DCA 1980). In 1965, the Palm Beach County Regional Planning Board formulated and issued “A Plan For Regional Water Supply, Treatment and Distribution and Regional Sewage Collection, Treatment and Disposal,” wherein it designated the City of Boca Raton as the “Designated Agent” of the Boca Raton Service Area. The City accepted the plan and the designation. Thereafter, Allstate requested water and sewer services for a tract within the unincorporated area of the Boca Raton Service Area. Boca Raton refused to provide such service unless Allstate would comply with certain of its zoning and planning ordinances. Allstate declined and filed a multi-count action seeking to require Boca Raton to provide services without conditions. In affirming the trial court’s dismissal of the action for failing to state a cause of action, the Fourth District held that Boca Raton’s voluntary participation in the plan did not place an absolute duty on Boca Raton to provide water and sewage to landowners outside its boundaries.
The plan in Allstate is not identical to the 201 Plan in this case, but it is similar in its intent and procedures. We determine that the general principles announced in Allstate are applicable here and that the mere participation of the City in the 201 Plan did not require the City to provide unconditional service within its service area. The record fails to show substantial and competent evidence that the City engaged in any other conduct which would impose such a duty. The Inter-local Agreement is specifically authorized by section 180.19, Florida Statutes (1983), as an agreement between municipalities and has no interrelation with the 201 Plan or the issues presented here for our determination.
The underlying issue in this controversy is one of economics. If forced to annex, Allen’s Creek will not be able to build its project as planned due to more restrictive requirements of the City’s comprehensive use plan as opposed to the less restrictive use plan of Pinel-las County. If forced to provide service without annexation, the City will lose the revenue of impact and other fees and taxes charged to its residents which make up part of its overall plan to finance and provide municipal services.
There is nothing in this record to support the conclusion that this economic need on the part of the City does not provide a natural basis for the requirement of annexation. If Allen’s Creek declines to meet the City’s condition, it is not unable to obtain like services from alternative sources. It may seek approval from the appropriate state and county agencies to construct its own self-contained treatment facility. It may also request the City of Largo to provide services. Such a request would require the consent of the City; however, we do not reach the question of whether the City could in good faith refuse such consent in view of the issues presented and resolved here.
Reversed.
FRANK, C.J., and PARKER, J., concur.

. Ordinance 68-97 is a resolution establishing the City’s policy pertaining to the use of city sanitary sewers by property owners outside the city limits. It provides: "It is the basic policy of the City that no property owner shall be allowed to connect to said sanitary sewer without first being annexed into the City.”

. Clearwater Service Area
The City of Clearwater will provide service to an area bounded on the north and west by the extremities of the Central Pinellas 201 planning area, and on the south by Belleair Road, exclusive of any incorporated portion of Largo, Belleair or Dunedin. The area includes the municipal limits of Clearwater and Safety Harbor as well as a significant quantity of unincorporated land.