679 So.2d 1172 (1996)
ALLEN'S CREEK PROPERTIES, INC., etc., Petitioner,
v.
CITY OF CLEARWATER, etc., Respondent.
No. 86123.
Supreme Court of Florida.
September 19, 1996.
*1173 R. Nathan Hightower and Susan Fox of Macfarlane, Ausley, Ferguson & McMullen, Clearwater, for Petitioner.
Paul Richard Hull, Assistant City Attorney, Clearwater, for Respondent.
KOGAN, Chief Justice.
We have for review City of Clearwater v. Allen's Creek Properties, Inc., 658 So.2d 539 (Fla. 2d DCA 1995), wherein the district court, by separate order, certified the following question to be of great public importance:
MAY A MUNICIPALITY REFUSE TO PROVIDE SEWER SERVICE, OR CONDITION THE PROVISION OF SEWER SERVICE ON ANNEXATION, AS TO NONRESIDENTS LOCATED WITHIN ITS EXCLUSIVE *1174 SEWER SERVICE TERRITORY ESTABLISHED PURSUANT TO INTER-LOCAL AGREEMENTS WITH NEIGHBORING MUNICIPAL SEWER SERVICE PROVIDERS?
Id. at 543. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative based upon the general rule that a municipality has no duty to supply services to areas outside its boundaries. See Allstate Insurance Co. v. City of Boca Raton, 387 So.2d 478 (Fla. 4th DCA 1980); C.C. Marvel, Annotation, Right to Compel Municipality to Extend its Water System, 48 A.L.R. 1222, 1230 (1956). Allen's Creek Properties (Allen's Creek) contends that the facts in this case establish an exception to this general rule and that consequently, Clearwater's refusal to provide services to unincorporated property located within its service area was improper. For the reasons expressed below, we disagree.
Allen's Creek owns a parcel of land located in the unincorporated area of Pinellas County immediately adjacent to Clearwater's city limits. In September 1990, Allen's Creek submitted to Pinellas County a site plan for the development of this parcel. Pinellas County officials directed Allen's Creek to apply to Clearwater for sewer services because the parcel was located within Clearwater's sanitary sewer service district.
Upon receiving the request for sewer services, Clearwater officials informed Allen's Creek that, pursuant to City of Clearwater, Florida, Ordinance 68-97 (August 5, 1968), the developer would have to consent to annexation before receiving sewer services. Allen's Creek refused to allow the City to annex the property and filed suit for declaratory and other relief.
The trial court held that Clearwater, through the Central Pinellas County 201 Facilities Plan (the 201 Plan) and its interlocal agreement with the City of Largo, had assumed an obligation to provide sewer service in its designated service area. That service area included the land owned by Allen's Creek. Further, the trial court concluded that the record did not present a rational basis to require annexation as a condition to service.
Clearwater appealed the trial court's decision, and the district court reversed. Allen's Creek, 658 So.2d at 542. The district court examined each of the documents on which the trial court based its decision. The first document, the 201 Plan, was devised pursuant to the Federal Water Pollution Control Act of 1972, Pub.L. No. 92-500, § 2, 86 Stat. 816. As a primary goal the Act sought to eliminate the discharge of pollutants into navigable waters by 1985. To meet this goal the federal government provided funding for the research and development of wastewater treatment management plans. Pursuant to section 201(g) of the Act these management plans were a prerequisite to the receipt of additional grants for construction of treatment facilities.
Clearwater, along with the several other entities,[1] participated in the development of a 201 Plan for its geographic area. The Plan delineated service areas for Clearwater as well as the other local entities involved in developing the Plan. The service areas were designated in order to determine the scope of facilities needed in the future. Clearwater approved these service area designations when it approved, by resolution,[2] the 201 Plan. Allen's Creek fell within Clearwater's designated service area.
The 201 Plan also recommended "deep well injection" as the best method of sewage treatment. The Environmental Protection Agency did not favor this method of treatment and consequently rejected the Plan. In response, Clearwater discontinued its study of "deep well injection" and developed, with its own funds, an alternative method of wastewater treatment. Clearwater thus never implemented the 201 Plan.
The district court determined that Clearwater's participation in the 201 Plan did not *1175 require it to provide sewer service to unincorporated areas within the service area designated by the 201 Plan. Allen's Creek, 658 So.2d at 542. Rather, the court found the 201 Plan was analogous to the plan in Allstate Insurance Co. v. City of Boca Raton, 387 So.2d 478 (Fla. 4th DCA 1980). Allen's Creek, 658 So.2d at 542. In Allstate, the court determined that a plan issued by the Palm Beach County Regional Planning Board, which designated the City of Boca Raton as the "Designated Agent" for the Boca Raton Service Area, did not place an absolute duty on the City of Boca Raton to provide services to landowners outside its municipal boundaries. 387 So.2d at 481. The Allstate plan expressly stated that "[n]othing is stated or implied that the designated agency shall be required to provide collection or transmission facilities." Id. at 480. Additionally, the Allstate plan offered other suppliers that could provide services if a designated agent would not. Id. Although the 201 Plan in the instant case did not contain these exact provisions, the district court concluded that the 201 Plan was similar in intent and procedure to the Allstate plan and consequently that the 201 Plan did not establish a duty to provide services to Allen's Creek. Allen's Creek, 658 So.2d at 542.
The district court also examined the interlocal agreement that the City of Clearwater and the City of Largo entered pursuant to section 163.01, Florida Statutes (1983). The agreement designated service areas for the City of Clearwater and the City of Largo consistent with the service areas designated for those cities in the 201 Plan. With respect to these service areas the agreement provides:
The parties shall have the exclusive right to provide wholesale and retail sanitary sewer service within the area allocated to such part and further agree not to compete with each other as to the provision of such sewer service outside their designated area.
The district court concluded that this agreement between the municipalities had no interrelation with the 201 Plan and had no bearing on the issues presented. Id.
Finally, the court noted that Allen's Creek development plan, while in conformity with the requirements set by Pinellas County, was not consistent with the more restrictive requirements set by Clearwater. Id. Accordingly, the district court recognized that if the trial court's decision were approved, Clearwater would be forced to provide service to a project that was inconsistent with its comprehensive use plan and would ultimately suffer a loss of revenue. Id. The city's economic need, the court concluded, provided a sufficient basis for the annexation requirement. Id. The court noted that if Allen's Creek chose not to annex it could seek services from alternative sources. Id.
Allen's Creek maintains that this case establishes an exception to the general rule that a municipality cannot be compelled to supply services to areas outside its municipal boundaries. We recognize that exceptions to this general rule do exist. For example, a municipality may be required to extend its services if it has agreed to do so by contract. A contract may require the municipality to serve only a particular entity outside its municipal boundaries. Such a contract does not necessarily require the municipality to serve other similarly situated entities. On the other hand, a contract may require the municipality to service an entire area outside its limits. In such cases the municipality will be required to serve all the public in that area at the lowest possible cost with the most efficiency as demonstrated by the decision in City of Clearwater v. Metco Development Corp., 519 So.2d 23 (Fla. 2d DCA 1987), review denied, 525 So.2d 876 (Fla.1988).
In Metco, the developer owned unincorporated property located in Clearwater's water service area. 519 So.2d at 24. The City was already serving the northern portion of the developer's property but refused to serve the southern portion unless the developer agreed to annexation. Id. The court determined that the City by contractually agreeing to serve the entire water service area, which included the developer's land, became obligated to do so. Id. at 24-25. A contract like that relied on by the court in Metco does not *1176 exist in the instant case.[3] This exception is therefore inapplicable.
Some jurisdictions recognize another exception to the general rule for those municipalities that through their conduct hold themselves out as public utilities. According to the jurisdictions that recognize this exception, a municipality that holds itself out as a public utility for a particular area outside its city limits has a duty to supply everyone in that area.[4] Allen's Creek contends that Clearwater held itself out as a public utility by entering an interlocal agreement that designated certain unincorporated areas as a part of its service area[5] and by supplying sewer services to certain nonresidents. Accordingly, Allen's Creek contends that Clearwater has a legal obligation to provide sewer service to nonresidents located within its service area.
We agree that through its conduct a municipality may assume the legal duty to provide reasonably adequate services for reasonable compensation to all of the public in an unincorporated area. See City of Winter Park v. Southern States Utilities, Inc., 540 So.2d 178, 180 (Fla. 5th DCA 1989)(city's passage of ordinance requiring property owners outside the city but within a zone designated by the ordinance to connect to the city's sewer service when available was conduct sufficient to bring into effect law applicable to public utilities). We add however that the conduct must expressly manifest the municipality's desire or intent to assume that duty. A municipality's decision to provide service without restriction in an area outside its boundaries would meet this requirement. The 201 Plan and interlocal agreement relied on here do not. Like the plan in Allstate, nothing in either the Plan or agreement affirmatively states that Clearwater will provide services to the unincorporated area. Nor do these agreements preclude those located outside Clearwater's city limits but within its service area from seeking services from an alternative source.[6]
Allen's Creek also contends that the City has acceded to the status of a public utility because it provides services to others outside its city limits. Allen's Creek, however, has not demonstrated that Clearwater's provision of services in these instances was not one of the limited exceptions it makes to its general policy of providing only residents with sewer service. Providing service outside its boundaries in only limited situations, as Clearwater has done here,[7] does not amount to an affirmative expression of intent to serve all in the area. Clearwater therefore has not accepted a duty to provide services to the unincorporated land located in its service area.
Because Clearwater has no duty to provide services to the unincorporated land within its service area, we conclude that the City may condition upon annexation the landowner's receipt of sewer services. That condition however must be applied consistently, and a reasonable justification for the condition *1177 must exist. See Sebring Utilities Comm'n. v. Home Savings Ass'n. of Florida, 508 So.2d 26, 28 (Fla. 2d DCA)("Courts will not interfere with a municipal utility's exercise of its authority as long as the municipality does not arbitrarily discriminate between its customers and can present reasonable justifications for its actions."), review denied, 515 So.2d 230 (Fla.1987). We find that Clearwater's condition of annexation meets both these requirements. The annexation policy is applied to the entire unincorporated area with only specific limited exceptions. Additionally, Clearwater would suffer a loss of revenue and would be unable to ensure adequate services to its own residents if it were required to dispense with this annexation condition.
Accordingly, we approve the decision of the district court. We find that the agreements entered by Clearwater in this case did not affirmatively express the City's intent to supply sewer service to the unincorporated portion of its sewer service area. Nor did Clearwater engage in any other conduct that expressed the intent to serve this area. The general rule thus still applies to this case and requires us to answer the certified question in the affirmative.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Those entities included the Florida Department of Environmental Protection, the United States Environmental Protection Agency, the City of Largo, the City of Safety Harbor, the Town of Belleair, and Pinellas County.
[2] City of Clearwater, Florida, Resolution 78-132 (December 7, 1978).
[3] We recognize that section 163.01(5), Florida Statutes (1989), refers to interlocal agreements as contracts. Even if we recognize the interlocal agreement in this case as a contract, the agreement does not indicate that Clearwater will unconditionally supply the service area located outside its city limits. It merely states that Clearwater, as opposed to the City of Largo, has the exclusive right to serve this area.
[4] See, e.g., Yakima County (West Valley) Fire Protection Dist. No.12 v. City of Yakima, 122 Wash.2d 371, 858 P.2d 245, 251 (1993); 48 A.L.R. at 1230.
[5] The parties and the district court refer to Clearwater's service area as "exclusive," but neither the 201 Plan or the interlocal agreement refer to it that way. We find the term "exclusive" misleading here because, as the district court pointed out, there are other sources of sewer service available to Allen's Creek. Allen's Creek could, with Clearwater's approval, seek services from the City of Largo. With approval from the proper agencies Allen's Creek could also construct its own treatment facility. Accordingly, we do not use the term "exclusive" when referring to Clearwater's service area.
[6] We do not address whether a refusal by Clearwater to allow Allen's Creek to apply for services elsewhere would amount to conduct sufficient to manifest the intent to serve all in the service area as this issue is not presented to us for review.
[7] Clearwater provides sewer services, pursuant to legislative act, to areas which it provided services in the early seventies. Clearwater also provides sewer service to those areas in the City of Largo which Largo is unable to serve.