Klingensmith, J., dissenting. Although municipalities typically do not have a duty to supply services to areas outside their boundaries, I recognize that a municipality may be required to supply services outside its boundaries if its conduct expressly manifested the desire or intent to assume such a duty. See Allen’s Creek Props., Inc. v. City of Clearwater, 679 So.2d 1172, 1174-76 (Fla. 1996). However, this exception, which is rooted in the concepts of detrimental reliance and estop-pel, does not apply here. CCA could not reasonably claim detrimental reliance because Pembroke Pines never expressly manifested its desire to such an extent as to impose the duty of providing services to the CCA site. Accordingly, I dissent from the majority’s opinion. In the EMS ILA, Pembroke Pines expressed only a nascent willingness to service some future facility. The stated desire to “expeditiously approve a water/waste water utility agreement” was insufficient to constitute an affirmative, express manifestation of Pembroke Pines’ unreserved intent. Rather, the language of the EMS ILA was only an implicit expression of possible future intent, devoid of an affirmative expression of present intent resembling a formal enactment of an ordinance or resolution. The EMS ILA is best described as nothing more than an “agreement to make an agreement,” which is unenforceable under Florida law. See Irby v. Mem’l Healthcare Grp., 901 So.2d 305, 306 (Fla. 1st DCA 2005). After the EMS ILA was approved, CCA submitted to Pembroke Pines a proposed Water & Sewer Agreement for a 1,500-bed facility, requesting that the agreement be finalized at the next City Commission meeting because CCA knew that any water and sewer connection for the CCA site would ultimately require formal approval by a vote of the City Commission.[3] However, the City Commission never approved the agreement for services with CCA. Instead, the City Commission voted to adopt a resolution expressing its opposition to erecting the ICE detention center on the CCA site. Thus, CCA proceeded on the incorrect assumption that Pembroke Pines could not change its collective mind on its willingness to agree to provide utility services, failing to consider that it is not uncommon for a municipality to embark on a prospective plan of action only to later reverse course due to its citizens’ disapproval. Respect for the separation of powers precludes us from substituting our own collective judgment for that of Pembroke Pines’ elected leaders who are, and must remain, accountable to their citizens for any policy decisions they make. Moreover, although Pembroke Pines previously provided some utility services to customers outside its boundaries, it did so only in limited situations. In light of CCA’s awareness that compliance with the applicable provisions of the Code of Ordinances was required, these circumstances on the whole did not amount to an affirmative expression of Pembroke Pines’ unreserved intent to assume the duty of providing utility services to the CCA site. See Allen’s Creek, 679 So.2d at 1176 (“Providing service outside its boundaries in only limited situations, as Clearwater has done here, does not amount to an affirmative expression of intent to serve all in the area.”).. To conclude, this new majority opinion discusses nothing of significance that was overlooked the first time we considered the issue. That-the City Commission formally approved -the EMS ILA does not change its wording; all that happened was that the City Commission approved at-that point an unenforceable -“agreement to agree.” The majority’s opinion should give every local government in this state considerable pause, as it now holds that a city cán' now be bound by its mere favorable expressions of future intent despite no formal approval by the city’s governing body, no contract, and no estoppel created by detrimental reliance.- Which, it seems, is plenty for the-majority to find that an enforceable duty was created against Pembroke Pines. This “plenty,” however, “is plenty of nothing, and, apparently, nothing is plenty for' th[is] Court.” See Bank Markazi v. Peterson, — U.S. —, 136 S.Ct. 1310, 1335, 194 L.Ed.2d 463 (2016) (Roberts, C.J., dissenting). . In fact, section 50.10(B) of the Pembroke Pines Code of Ordinances (2012), states that "property located outside the city limits shall not be allowed to connect to a city utility system unless the connection is authorized by the City Commission.” This authorization can only occur as provided by section 3.07(e) of the Charter of the City of Pembroke Pines, which states, "[n]o action of the Commission ... shall be valid or binding unless adopted by the affirmative vote of three (3) members of the Commission.”