*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOHN D. ROCHON, | ) | |
| | ) | Supreme Court No. S-18908 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 2NO-21-00228 CI |
| v. | ) | and 2NO-21-00231 CI (consolidated) |
| | ) | |
| CITY OF NOME, ALLEN WRIGHT, | ) | O P I N I O N |
| and JACKIE L. READER, | ) | |
| | ) | No. 7765 – May 2, 2025 |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Romano D. DiBenedetto, Judge.

Appearances: Jeffrey J. Barber, Barber & Associates, LLC, Anchorage, for Appellant. Matthew Singer, Lee C. Baxter, and William C.G. Wright, Schwabe, Williamson & Wyatt, P.C., Anchorage, for Appellees City of Nome and Allen Wright. No appearance by Appellee Jackie L. Reader.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

I.      INTRODUCTION

After he was injured in an accident outside city limits, a man sued a city and an emergency-responder employee for negligently providing assistance and aggravating his injuries. The city and employee offered the man $7,500 to settle the

lawsuit, which he did not accept. They also moved for summary judgment, arguing that they could not be sued because AS 09.65.070(d)(4) does not allow lawsuits based on the "gratuitous extension of municipal services" beyond city limits. The superior court granted summary judgment in their favor, ruling that their actions were gratuitous because they were under no legal obligation to take them. The court also granted attorney's fees to the city and employee based on a court rule that requires a party to pay the other side's legal fees if the party rejected an offer of judgment to settle the case that was more favorable than the judgment the party ultimately received.

The man appeals, arguing that the city's emergency response was not gratuitous because he was billed a mileage fee for the ambulance service. He also argues that the city and employee were not entitled to attorney's fees because their pretrial offer of judgment was invalid. Because AS 09.65.070(d)(4) bars the lawsuit and the offer of judgment was valid, we affirm the superior court.

## II. FACTS AND PROCEEDINGS[1]

### A. Facts

Some time after midnight on October 12, 2019, John Rochon and two friends were in a single vehicle accident about 35 miles outside of Nome city limits. Rochon was injured when he was thrown from the vehicle. The three friends stayed in the car overnight until they were able to flag down another vehicle and call for help.

The Nome Volunteer Ambulance Department responded around 10 a.m. One of the responders was an emergency medical technician (EMT) named Allen Wright. Wright worked for the City of Nome, which operated the ambulance department.

---

[1] The oral argument in this case took place before an audience of students and teachers at Nome-Beltz Middle High School in Nome as part of the "Supreme Court Live" community outreach program.

The ambulance crew used a backboard to move Rochon from the backseat of the vehicle into a firetruck to take him to the hospital in Nome. Instead of securing him to the backboard with straps, three EMTs held him on the backboard. They drove Rochon over 35 miles on a gravel road to the hospital. Rochon was then medevacked to Anchorage for treatment. He had spinal surgery followed by a rehabilitation program, but continues to suffer from injuries he received.[2]

The ambulance department billed Rochon for its emergency service. Based on a city ordinance that set a base fee of $725 for advanced life support and $15 for each mile the ambulance travelled,[3] the ambulance department charged Rochon a total of $1,775 for its services.

## B.    Proceedings

Rochon sued the City of Nome and Wright in September 2021. He alleged that Wright negligently rescued him by failing to adequately secure him and driving too quickly, exacerbating his injuries. He claimed that the City was vicariously liable for Wright's conduct and separately liable for negligent hiring, supervision, and training. He sought over $100,000 in damages.

Around the same time Rochon sued the City, he filed a separate lawsuit against a Nome resident named Jackie Reader. He claimed that she provided alcohol to the underaged woman who he alleged had been driving. The superior court consolidated the two cases.

The City and Wright filed a joint answer to Rochon's complaint. They asserted an affirmative defense of immunity, arguing that his lawsuit was barred under AS 09.65.070. That statute states that lawsuits for damages cannot be brought against

---

[2]    Rochon suffered multiple fractures from the accident and has permanent disabilities.

[3]    The fee schedule in City of Nome Ordinance § 2.40.160(f) applies to ambulance services both within and outside city limits.

municipalities and their agents based on certain types of actions. The City and Wright also served an offer of judgment for $7,500 to Rochon to resolve "all claims that were or could have been asserted by or between the parties in Case No. 2NO-21-00228 CI," the case he had filed against them. Under Alaska Civil Rule 68, a party that makes an offer of judgment to the opposing party may be entitled to attorney's fees if the opposing party rejects the offer but ultimately receives a less favorable judgment.[4] Rochon did not reply to the offer.

The City and Wright moved for summary judgment.[5] They argued that AS 09.65.070(d)(4) barred Rochon's lawsuit because it was "based on the exercise or performance during the course of gratuitous extension of municipal services on an extraterritorial[6] basis." They interpreted "gratuitous extension of municipal services" to mean "when a city provides a municipal service outside city limits but charges only the standard in-city fees." They pointed out that the ambulance department had no legal duty to respond to an emergency 35 miles outside of city limits but did so anyway and charged Rochon based on the fee schedule established by the city ordinance. They argued that the ambulance service was therefore a gratuitous extension of services covered by the statute. Rochon opposed summary judgment, arguing that the emergency response was not gratuitous because its mileage charges meant that out-of-town responses would always result in higher fees than in-town responses.

---

**4**      Under this rule, if the opposing party declines the offer and then receives a judgment that is 90% of the offer or less, it must pay a percentage of the offering party's attorney's fees. Alaska R. Civ. P. 68(a)-(b).

**5**      Summary judgment is a judgment, usually before trial, on a particular issue. It can only be granted when "there is no genuine issue as to any material fact" and the party seeking summary judgment "is entitled to a judgment as a matter of law." Alaska R. Civ. P. 56(c).

**6**      "Extraterritorial" comes from Latin, meaning "outside the territory."

The superior court granted summary judgment in favor of the City and Wright. The court considered the plain language of the statute, its legislative history, and an Alabama court's interpretation of "gratuitous."[7] It concluded that "gratuitous" means "without any legal or contractual obligation to do so and without charging anything more than the standard fee." The court then held that because the City charged the same rate for the rescue outside its municipal boundaries that it charges for rescues within city limits, the City and Wright were protected against Rochon's lawsuit by AS 09.65.070(d)(4). The court dismissed Rochon's lawsuit.

The City and Wright then moved for attorney's fees. They asked the court to find that the offer of judgment they gave Rochon was a valid offer under Civil Rule 68 and that Rochon was required to pay 75% of their attorney's fees because he had not accepted their pretrial offer. They also asked that if the court decided Rule 68 did not apply, it should find that they were the prevailing party and award them attorney's fees under Civil Rule 82.[8] The superior court held that they were entitled to attorney's fees under Rule 68 and granted them an award of $16,133.25.

Rochon appeals the court's summary judgment and attorney's fees award. Seeing no error, we affirm both.

---

[7]    *See City of Attalla v. Dean Sausage Co.*, 889 So. 2d 559, 565 (Ala. Civ. App. 2003).

[8]    Under Rule 82, the prevailing party in a case is entitled to an award for a portion of the attorney's fees it was charged in connection with the lawsuit. Alaska R. Civ. P. 82(a)-(b). A party that receives attorney's fees under Rule 68 cannot also receive fees under Rule 82. Alaska R. Civ. P. 68(c).

## III. STANDARD OF REVIEW

The standard of review[9] we apply to an appeal from summary judgment is de novo.[10] We affirm summary judgment "only if there is no genuine issue of material fact and if the party is entitled to judgment as a matter of law."[11] We also review questions of statutory interpretation de novo, applying our independent judgment and "adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[12]

"We review an award of attorney's fees under an abuse of discretion standard,"[13] but the question of whether a settlement offer is a valid Rule 68 offer is an issue we review de novo.[14]

---

[9] A standard of review is the lens through which we consider a legal argument. There are several different standards of review, each giving different weight to the trial court's decisions.

[10] *Societe Fin., LLC v. MJ Corp.*, 542 P.3d 1159, 1165 (Alaska 2024). *De novo* is Latin for "from the beginning" or "anew." Under this standard of review, we do not give any deference to the superior court's decision and act as though the question were presented to us first.

[11] *Id.* (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petrol., Inc.*, 322 P.3d 114, 122 (Alaska 2014)).

[12] *Alaska Trappers Ass'n v. City of Valdez*, 548 P.3d 332, 336 (Alaska 2024) (quoting *City of Valdez v. State*, 372 P.3d 240, 246 (Alaska 2016)).

[13] *Oakly Enters., LLC v. NPI, LLC*, 354 P.3d 1073, 1079 (Alaska 2015) (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007)). The abuse of discretion standard is very deferential to the superior court. When we review a superior court's decision under this standard of review, we will reverse it only if the decision was "arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive." *Id.* (quoting *Ware*, 161 P.3d at 1192).

[14] *Roderer v. Dash*, 233 P.3d 1101, 1112 (Alaska 2010).

## IV.   DISCUSSION

### A.    Alaska Statute 09.65.070(d)(4) Bars Rochon's Lawsuit.

Alaska Statute 09.65.070(d)(4) states:  "An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . . is based on the exercise or performance during the course of gratuitous extension of municipal services on an extraterritorial basis."  Whether Rochon may sue the City and Wright for his injuries depends on the meaning of a single word in the statute: gratuitous.

Rochon argues that the ambulance response was not gratuitous because the City charged him a fee for each mile the ambulance travelled.  He argues that "gratuitous" means without additional cost.  The City disagrees, asserting that the word "gratuitous" as it is used in the statute means without legal obligation and without charging more than the standard fee.  We must therefore interpret the statutory language and the meaning of gratuitous to determine whether the superior court's decision was correct.

We rely on a law's "text, legislative history, and underlying statutory purpose" to determine its meaning.[15]  Our analysis is a "sliding-scale approach," where "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be" to overcome its plain meaning.[16]  But before we apply this analysis, we first address Rochon's argument that we should interpret AS 09.65.070(d)(4) more strictly than other statutes.

---

[15]    *Native Vill. Kwinhagak v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 542 P.3d 1099, 1114 (Alaska 2024).

[16]    *Williams Alaska Petrol., Inc. v. State*, 529 P.3d 1160, 1181 (Alaska 2023) (alteration in original) (quoting *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019)).

### 1.    Alaska Statute 09.65.070(d) is not a forfeiture statute.

Rochon argues that AS 09.065.070(d) is a forfeiture statute that must be interpreted narrowly.  The City disagrees.  The City argues that Rochon had to possess some right that the statute prevents him from exercising before the statute could make him forfeit that right.  The City argues that nothing was forfeited because Rochon never had a right to sue the City for negligence under a common law claim.[17]  It argues that cities have traditionally had sovereign immunity[18] against lawsuits like Rochon's, so he did not have a right to sue that the statute took away.

We have long recognized that "statutes which cause forfeiture are not favored."[19]  As a result, we have rejected broad readings of statutes that extinguish otherwise valid common law claims.[20]  We have previously interpreted other subsections of AS 09.65.070, but we have never considered it to be a forfeiture statute.[21]  Nor have we ever held that there was any other reason to interpret it narrowly.[22]  Instead,

---

[17]    Common law is the set of rules that develops from judicial decisions instead of written statutes.

[18]    Sovereign immunity is the principle that governments cannot be sued without their consent.  Rochon correctly points out that *sovereign* immunity bars suits against states, not municipalities.  *See Alden v. Maine*, 527 U.S. 706, 756 (1999).  But common law also recognized municipal immunity and protected cities from lawsuits like his.  *See* Fred Smith, *Local Sovereign Immunity*, 116 COLUM. L. REV. 409, 424-28 (2016).

[19]    *State for the Use of Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1157 (Alaska 1984).

[20]    *E.g.*, *Indust. Power & Lighting Corp. v. W. Modular Corp.*, 623 P.2d 291, 294 (Alaska 1981).

[21]    *See Trigg v. City of Nome*, 929 P.2d 1273, 1274 (Alaska 1996); *cf. Wilson v. Mun. of Anchorage*, 669 P.2d 569, 572 (Alaska 1983) (rejecting argument that AS 09.65.070(d) fully extinguished claims).

[22]    *See J & L Diversified Enters., Inc. v. Mun. of Anchorage*, 736 P.2d 349, 351-54 (Alaska 1987) (rejecting request to interpret law narrowly).  *But see Lane v. City*

we have consistently applied our traditional method of statutory interpretation to AS 09.65.070.[23]  We see no reason to change course now.

### 2. The statute's plain meaning suggests gratuitous means "without legal obligation."

Rochon and the City each claim that the plain meaning of "gratuitous" supports their position.  Each of them cites dictionary definitions to support their position.

Standard dictionaries include a number of definitions for "gratuitous." Gratuitous can mean both "without cost" and "without legal obligation."[24]  The leading legal dictionary, Black's Law Dictionary, defines "gratuitous" as "[d]one or performed without obligation to do so" or "[d]one unnecessarily."[25]  Dictionaries thus lend support to both Rochon and the City.

When we interpret a term with more than one possible meaning, we sometimes find it useful to consider how other courts have understood the term in similar contexts.[26]  Although we do not have to follow those decisions, their reasoning can be helpful and persuasive.

---

*of Juneau*, 421 P.3d 83, 88-92 (Alaska 2018) (explaining standard for discretionary function immunity is broader for municipal employees than municipalities).

[23]  *See, e.g.*, *Lane*, 421 P.3d at 88-92; *Urethane Specialties, Inc. v. City of Valdez*, 920 P.2d 683, 687-89 (Alaska 1980).

[24]  *See Gratuitous*, MERRIAM-WEBSTER DICTIONARY (rev. ed. 2022) ("[N]ot called for by the circumstances," "costing nothing"); *Gratuitous*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) ("[G]iven or received without cost or obligation; free.").

[25]  *Gratuitous*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[26]  *See, e.g.*, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*, 556 P.3d 757, 769-70 (Alaska 2024); *State, Dep't of Pub. Safety v. Doe*, 425 P.3d 115, 120-21 (Alaska 2018).

It does not appear that any other state includes "extraterritorial" in its municipal immunity statute. However, many states protect those who provide emergency care "gratuitously and in good faith" from liability for damages resulting from that service.[27] These laws are generally referred to as "Good Samaritan laws." Such laws were created because common law did not require strangers to help people needing emergency assistance.[28] But if someone chose to help another and the emergency assistance went wrong, the rescuer could be sued.[29] Good Samaritan laws were passed to encourage rescues by eliminating the threat of liability.[30] Courts outside Alaska that have interpreted these laws conclude that they protect rescuers who were under no duty to act.[31]

---

[27] *E.g.*, Ariz. Rev. Stat. Ann. § 32-1471; Fla. Stat. Ann. § 768.13(2)(a); Nev. Rev. Stat. § 41.500(1); Utah Code Ann. § 78B-4-501(2).

[28] *Lee v. State*, 490 P.2d 1206, 1208 (Alaska 1971) ("At common law there is no duty to rescue.").

[29] *Id.*; RESTATEMENT (SECOND) OF TORTS § 323 (AM. L. INST. 1965).

[30] *Lee*, 490 P.2d at 1208-09.

[31] *Flynn v. United States*, 902 F.2d 1524, 1529-30 (10th Cir. 1990); *Wimmer v. Pandita*, No. 050910577, 2011 WL 5296624 (D. Utah, May 24, 2011) (mem.); *Miller v. Arnal Corp.*, 632 P.2d 987, 992 (Ariz. App. 1981) (holding ski patrol immune from ordinary negligence claim under statute prohibiting suits against persons rendering emergency aid "gratuitously and in good faith" because ski patrol owed no duty to claimant); *Frawley v. City of Lake Worth*, 603 So. 2d 1327, 1328 n.2 (Fla. Dist. App. 1992) (observing in dicta that rescuer "had no duty to render assistance . . . and therefore could qualify as one who acted gratuitously"); *Charleston Station, LLC v. Stephens*, No. 63943, 2015 WL 9480322, at *4-5 (Nev. Dec. 23, 2015); *cf. Schmid v. Werner*, 100 N.Y.S.2d 860, 863-64 (N.Y. App. Div. 1950) (construing gratuitously as referring to voluntary service, not free service).

The broader context of AS 09.65.070 as a whole supports reading it to protect those who do not have a duty to act.[32] The statute has six subsections; each one immunizes municipalities from lawsuits under different circumstances.[33] Subsection (4), whose meaning Rochon and the City dispute, immunizes cities and their agents for actions "based on the exercise or performance during the course of gratuitous extension of municipal services on an extraterritorial basis." The other subsections provide immunity from lawsuits for other acts. Subsection (1) protects against failure to do health and safety inspections of property or failure to discover or abate health and safety violations; subsection (2) protects municipalities' discretionary functions;[34] subsection (3) protects municipalities when they issue or deny permits, licenses, and the like; subsection (5) protects municipalities when they take actions requested or required by the state to meet public safety requirements; and subsection (6) protects them from liabilities arising from the operation of an enhanced 911 emergency system.[35]

All of the statute's subsections immunize municipalities from liability for voluntary services. All but one — actions required by the state to meet public safety — are optional.[36] This context thus suggests that the plain meaning of "gratuitous" is

---

[32] *See Morkunas v. Anchorage Tel. Util.*, 754 P.2d 1117, 1120 n.12 (Alaska 1988) ("The meaning of a statutory provision is determined by its language construed in light of the whole instrument.").

[33] AS 09.65.070(d).

[34] Discretionary functions are policy decisions and include things like deciding whether a city should build a new boat launch, *Haight v. City & Borough of Juneau*, 448 P.3d 254, 258-59 (Alaska 2019), reinstall a highway guardrail, *Steward v. State*, 322 P.3d 860, 863-64 (Alaska 2014), or place a crosswalk in a particular intersection, *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 980 (Alaska 2005).

[35] AS 09.65.070(d)(1)-(3), (5)-(6).

[36] *See, e.g.*, AS 29.35.131 (allowing municipalities to "elect" to provide enhanced 911 emergency system).

something that a city has chosen to do, but is not required to do — that is, something the city is "without legal obligation" to do. The other subsections that provide the context for interpreting (d)(4) do not support Rochon's proposed definition of "without additional cost." Rochon therefore bears a heavy burden to present convincing evidence of contrary legislative history and purpose to convince us that his definition is correct.[37]

### 3. Legislative history shows AS 09.65.070(d)(4) was intended to encourage extraterritorial provision of services.

Rochon argues that the legislative history referred only to municipal services billed at a fixed, flat fee or provided without charge. Therefore, he continues, the legislature did not intend to immunize services with a mileage charge. The City counters that the legislature wanted to encourage municipalities to be Good Samaritans and to provide services beyond their boundaries. It says that it did just that when it rescued Rochon and should be protected by the statute.

The legislature added subsection (d) to the statute in 1977[38] in response to two of our decisions: *State v. Jennings*[39] and *Adams v. State*.[40] We held in those cases that the state and municipalities could be liable for their failure to discover and abate fire hazards.[41] We predicted that it was "unlikely that limited liability for negligence in an inspection will force the state from the field of fire inspection."[42]

---

[37] *See Eng v. State, Dep't of Pub. Safety*, 557 P.3d 1198, 1202 (Alaska 2024) ("When a statute's meaning appears clear and unambiguous, 'the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent.'" (quoting *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019))).

[38] Ch. 37, § 3, SLA 1977.

[39] 555 P.2d 248 (Alaska 1976).

[40] 555 P.2d 235 (Alaska 1976).

[41] *Adams*, 555 P.2d at 240-41, 244; *Jennings*, 555 P.2d at 251.

[42] *Adams*, 555 P.2d at 244.

We were wrong. Municipalities limited and sometimes entirely stopped doing fire inspections or providing fire protection due to extremely high insurance costs and fear of losing expensive lawsuits.[43] The fallout was not limited to fire inspections and protection. Yakutat repealed its fire prevention building code.[44] Kake's lawyer advised it not to adopt building, plumbing, and electrical codes.[45] Wrangell discontinued a condemnation program.[46] And Petersburg discontinued its "rendition of gratuitous fire protection service" beyond city limits.[47]

It was against this landscape that the legislature amended AS 09.65.070. It passed subsection (d)(4) in "respon[se] to concerns that municipalities' ability to govern was hampered by threats of tort liability."[48] An explanation of the bill from supporters stated that it was "intended to afford limited liability with a view toward non-curtailment of certain traditional functions."[49] It described the proposed amendment as "an application of the Good Samaritan principle." The document stated that "[a] municipality having *no contractual duty* to respond beyond its jurisdictional

---

[43] *See* Susan Gilmore, *City May Have To Shoulder Fire Liability*, SE. ALASKA EMPIRE, Mar. 23, 1977; Letter from Douglas G. Weiford, Anchorage Mun. Manager, to Ronald A. Hendrie, State Fire Marshall (Mar. 16, 1977); City of Craig, Res. No. 77-8 (Mar. 17, 1977).

[44] Memorandum from L.B. Jacobsen, H.B. 354 File/Limited Liability for Municipalities (Mar. 31, 1977).

[45] *Id.*

[46] *Id.*

[47] Memorandum from L.B. Jacobsen to Petersburg City Manager (Mar. 4, 1977).

[48] *Lane v. City of Juneau*, 421 P.3d 83, 89 (Alaska 2018).

[49] L.B. JACOBSEN ET AL., EXPLANATION OF HB 354 AND SB 249 RELATING TO SUITS AGAINST LOCAL GOVERNMENTS, S. Cmty. & Reg'l Affs. Comm., 10th Leg., 1st Sess. at 6 (1977).

limits fears the consequences of liability and adverse insurance costs and is induced to abstain."[50]

We have previously observed that Good Samaritan statutes are "designed to protect persons from civil liability for negligent acts or omissions committed while *voluntarily* providing emergency assistance."[51] The "primary purpose" of such laws "is to encourage prompt emergency care by granting immunity from civil damages and removing the fear of liability."[52]

Defining "gratuitous" as "without legal obligation" is consistent with this legislative purpose to encourage municipalities to be Good Samaritans and provide services that they are not required to provide. Unless a municipality has entered a contract otherwise, it generally has no duty to provide emergency or other services beyond its borders.[53] If it can be sued for delivering those services, it has little incentive to do so. The prospect of having to pay damages from a lawsuit further discourages extraterritorial services. Subsection (d)(4) removes that threat.

Rochon's definition of "gratuitous" would force municipalities to choose either to provide services beyond their city limits for free or to risk being sued for them. Unlike the City's proposed definition, Rochon's definition provides no incentive to municipalities to extend their service area. Failing to provide an incentive is contrary to the legislative intent of increasing service provision. Municipalities faced with the

---

[50]     *Id.* (emphasis added).

[51]     *Deal v. Kearney*, 851 P.2d 1353, 1358-59 (Alaska 1993) (emphasis added).

[52]     Danny R. Veilleux, *Construction and Application of "Good Samaritan" Statutes*, 68 A.L.R.4th 294, § 2[a] (1989).

[53]     *Allen's Creek Properties, Inc. v. City of Clearwater*, 679 So. 2d 1172, 1174 (Fla. 1996) ("[A] municipality has no duty to supply services to areas outside its boundaries."); *cf.* AS 29.35.020(a) (allowing municipalities to provide services beyond their borders if otherwise authorized by law).

choice of shouldering the cost of extraterritorial rescues themselves or risking expensive damages awards in lawsuits would likely just stop providing services, which is what happened in the wake of our earlier cases. Rochon's definition therefore cannot be squared with AS 09.65.070(d)'s purpose of increasing services.

The definition of "gratuitous" proposed by the City of Nome furthers the aim of AS 09.65.070(d)(4) to immunize municipalities from liability for providing emergency services outside of city limits. Because the City had no obligation to provide ambulance services 35 miles away and charged the standard fare, we affirm the superior court's grant of summary judgment in favor of the City and Wright.

**B.     The Superior Court Did Not Err By Awarding Attorney's Fees.**

Soon after the lawsuit began, the City and Wright extended Rochon a Rule 68 offer of judgment, proposing to settle the case for $7,500. Rochon did not accept their offer.[54] Under Rule 68, a party that declines a qualifying offer of judgment must pay some part of the offering party's attorney's fees if the final judgment is at least 10% less favorable to him than the offer.[55] The purpose of this rule is to encourage settlement and prevent drawn-out litigation.[56] Because Rochon received $0 in the final judgment, the superior court awarded attorney's fees to the City and Wright under Rule 68.

Rochon contends that the superior court erred when it awarded attorney's fees. He first argues that the court erred when it found that the City and Wright's offer of judgment was valid under Rule 68. The rule requires that an offer involving multiple parties must "clearly indicate[] all claims between the parties that would be resolved if

---

[54]     Rochon did not respond to the offer. An offer that is not accepted within 10 days is considered withdrawn. Alaska R. Civ. P. 68(a).

[55]     Alaska R. Civ. P. 68(b). When there is more than one defendant, as here, the rule comes into effect if the amount of the judgment was at least 10% less than the offer. When there is only one defendant, a judgment that is 5% or less favorable triggers the rule. *Id.*

[56]     *Boiko v. Kapolchok*, 426 P.3d 868, 874 (Alaska 2018).

the offer were accepted" to be eligible for attorney's fees.[57]  In Rochon's view, the offer was ambiguous about which defendants it concerned because it "interchangeably" referred to the City and Wright.  That argument has no merit.  The offer explicitly stated on the first line "Defendants City of Nome and Allen Wright (collectively 'City of Nome')."  There is no ambiguity in the offer; "City of Nome" clearly means both the City and Wright.

Rochon next argues that the offer is ambiguous with respect to the claims it resolved.  In his view, the offer appeared to resolve all of his claims in this case, including his claim against Reader.  Therefore, he argues, the offer is invalid because Reader was not a party to it.

Again, Rochon's argument fails.  The offer stated that it would resolve "all claims that were or could have been asserted by or between the parties in Case No. 2NO-21-00228 CI."  Case No. 2NO-21-00228 CI is captioned "John D. Rochon, Plaintiff vs. City of Nome and Allen Wright, Defendants."  But Rochon filed a separate lawsuit against Reader.  That case is No. 2NO-21-00231 CI.  Reader is not a party to Rochon's lawsuit against the City and Wright.  The offer was not ambiguous with respect to the claims it resolved.

Rochon's third argument is that the offer presents apportionment difficulties.  The offer proposed an entry of judgment for $7,500 in favor of Rochon.  It did not specifically allocate the $7,500 between the City and Wright.  Rochon contends that this failure makes the offer invalid because it is unclear whether the judgment is to be entered against the City and Wright together or only against the City.

Once again, we are not persuaded.  A joint offer may be invalid if it presents apportionment difficulties.[58]  But an apportionment problem exists only if the

---

[57]     *Id.* at 875 (quoting *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 99 (Alaska 2015)).

[58]     *Id.* at 874-75.

offer of judgment "leave[s] unresolved serious disputes that, absent settlement, would have to be resolved by a jury."[59]  There are no such disputes here.  Rochon alleged that Wright was at fault for negligently rescuing him and that the City was vicariously liable for Wright's conduct — that is, responsible because it employed him.  He also claimed the City was at fault for negligently hiring, supervising, and training Wright.

The City has a duty to indemnify Wright for conduct within his scope of employment.[60]  Therefore the offer of judgment does not present an apportionment problem because the City would have been required to pay the entire amount.[61]

Finally, Rochon argues that the superior court abused its discretion by including prelitigation costs in its attorney's fee award.  The City attached billing records to its motion for attorney's fees.  Those records itemized the work done in connection with this litigation.  Rochon correctly observes that the City's calculation of its total attorney's fees connected with the litigation included charges from before he sued the City.  But the City identified and asked for payment under Rule 68 only for the fees it incurred from the date it sent its offer of judgment to Rochon.  It asked the court to consider awarding attorney's fees under Rule 82 only if it determined that the City was not entitled to fees under Rule 68.  But the court determined that the City was entitled to fees under Rule 68; it did not award any fees under Rule 82.

---

[59]  *Roderer v. Dash*, 233 P.3d 1101, 1113 (Alaska 2010).

[60]  Indemnify means to secure or protect against loss or legal liability.  At oral argument, the City acknowledged its obligation to indemnify Wright.  That means that it would be responsible for paying Wright's share of the damages, if there were any.

[61]  *See Roderer*, 233 P.3d at 1112-13 (concluding joint offer presented no apportionment problems when claims against separate defendants were overlapping); *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 641 n.28 (Alaska 2007) (treating employer and employee as one because their share of damages "would have been coextensive"); *cf. id.* at 640-44 (Alaska 2007) (holding offer raised apportionment difficulties because it potentially precluded recovery from third-party defendant who otherwise could have been separately liable and apportioned distinct share of damages).

## V. CONCLUSION

The superior court's grant of summary judgment and award of attorney's fees are AFFIRMED.